IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY L., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-1430-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and the parties' consent to proceed before the undersigned United States magistrate judge, Doc. 18, Plaintiff's appeal of the denial of her application for social security benefits is before the Court for determination. For the reasons detailed herein, the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

    *A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income under Title XVI of the Act. Doc.1, *passim*; Doc. 20. Plaintiff filed her application for the former disability benefits in November 2020 and for the latter a month later, both applications alleging disability beginning in December 2004 due to: (1) bipolar disorder; (2) lower back pain; (3) bilateral carpal tunnel; and (4) sleep apnea. Doc. 14-1 at 150, 304-05, 308-14, 338. She later amended her alleged onset date to December 2019. Doc. 14-1 at 105. Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g).

*B. Factual Background*

Plaintiff was 52 years old on her alleged onset date, has a high school education, and previously worked as a data entry clerk and home health care worker. Doc. 14-1 at 339, 345.

In support of her claims, Plaintiff largely relies on medical history beginning in March 2021,[1] when she was seen by Dr. David Ukoha, M.D., complaining of problems with her back, wrists, and right knee. Doc. 20 at 5-6; Doc. 14-1 at 51-52. At that visit, Plaintiff reported lower back pain of eight on a severity scale of up to 10, that frustrated mobility-related activities of daily living. Doc. 14-5 at 51. She further stated that she could (1) walk "most of the time" with a cane for not more than 75 yards; (2) stand for up to 60 minutes at a time; and (3) lift a maximum of 10 pounds. Doc. 14-5 at 51. Plaintiff indicated wrist pain of six on a severity scale of up to 10, with numbness, tingling, and radiating pain to her fingertips that caused her to drop objects. Doc. 14-5 at 52. Relatedly, she stated that she had poor grip strength and was unable to turn doorknobs. Doc. 14-5 at 52. Plaintiff also reported right knee pain of four on a severity scale of up to 10, with occasional swelling and stiffness, that likewise restricted her ability to engage in mobility-related activities of daily living. Doc. 14-5 at 52.

Upon physical examination, Dr. Ukoha deemed Plaintiff's musculature "normal," but noted that she was unable to "squat, hop, tandem walk, or toe walk," due to her back pain. Doc. 14-5 at 54. The doctor also noted that Plaintiff's (1) back pain decreased her spinal range of motion in all directions; (2) hands and wrists showed no muscular atrophy but did show decreased range of motion; and (3) knee showed mild joint line tenderness and certain limitations

---

[1] As an initial matter, the record contains extensive documentation related to Plaintiff's mental conditions during the relevant period. However, because the parties' briefs ffocus only Plaintiff's physical conditions, the Court limits its discussion of the medical evidence accordingly.

in her range of motion.  Doc. 14-5 at 54.  X-rays revealed degenerative joint disease of the lumbar spine, but no acute radiographic abnormality of Plaintiff's right knee.  Doc. 14-5 at 55.  Dr. Ukoha ultimately diagnosed (1) chronic low back pain; (2) lumbar degenerative joint disease; (3) bilateral carpal tunnel syndrome; (4) obesity; (5) obstructive sleep apnea; and (6) chronic nonspecific right knee pain.  Doc. 14-5 at 55.

Later that month, Plaintiff saw Dr. Shannon Kelsey, M.D., in the emergency department of Parkland Hospital after falling on her left side in her driveway.  Doc. 14-5 at 98.  She reported that she had iced her knee without improvement.  Doc. 14-5 at 98.  Dr. Kelsey's examination revealed swelling and tenderness, and noted "[a]brasion and ecchymosis to left anterior knee with tenderness over the patella and a small joint effusion . . . [r]ight first toe with [bruising] and tenderness . . . ."  Doc. 14-5 at 102.  X-rays of Plaintiff's left knee and right foot were negative for acute fracture and dislocation, and Plaintiff was ultimately diagnosed with left knee pain of unspecified chronicity, right toe pain, and abrasion.  Doc. 14-5 at 103, 105-6.

A few days later, Plaintiff returned to the emergency department, where she saw Dr. Dina Hazim, M.D., complaining of continued pain in her left knee and right big toe following her fall.  Doc. 14-5 at 114.  A physical examination revealed swelling, bruising, laceration, and tenderness of Plaintiff's left knee, bruising of her right big toe, and unspecified joint arthralgia.  Doc. 14-5 at 121.  Dr. Hazim instructed Plaintiff to use the "RICE" method for her injuries, buddy tape her big toe, wrap her knee, and take the prescribed pain medications.  Doc. 14-5 at 122.

In June 2021, imaging of Plaintiff's right foot at Parkland Hospital revealed a healed fracture in her little toe and mild degeneration in her big toe.  Doc. 14-5 at 533.

3

### C. State Agency Medical Consultant Findings

In April 2021, at the initial stage of the disability application process, a state agency medical consultant (SAMC), Dr. Laurence Ligon, M.D., found that Plaintiff was able to perform medium work but was limited to lifting up to 50 pounds occasionally and 25 pounds frequently; sitting up to 6 hours in an 8-hour day; and standing/walking for up to 6 hours in an 8-hour workday. Doc. 14-1 at 129-47. In October 2021, at the reconsideration stage, SAMC Dr. Patty Rowley, M.D., further limited Plaintiff to light work, including lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently. Doc. 14-1 at 154-55.

### D. Plaintiff's Hearing Testimony

At the administrative hearing in October 2022, Plaintiff testified her back pain was constantly 10 on a scale of 0-to-10, with spasms occurring four or five times per day for about 10 minutes each. Doc. 14-1 at 112-13. She stated she could sit for up to three hours at a time, but due to pain radiating from her back to her knees, she could not bend down to pick things up and she had trouble walking down steps. Doc. 14-1 at 113-14. Plaintiff further testified that her right knee pain is eight or nine on a scale of 0-to-10 every day and that her knee occasionally locks up, requiring her to massage it and pop it back into place. Doc. 14-1 at 117. Plaintiff averred that she also has trouble lifting and/or carrying more than a gallon of milk, and she cannot do any pushing or pulling, such as with a vacuum or a mop. Doc. 14-1 at 114. That said, she does not take any medication for back or knee pain and reports that she can walk for up to 30 minutes with a cane and up to 20 minutes without one. Doc. 14-1 at 114. She further testified that she has carpal tunnel in both hands and drops objects held in her left hand, which cramps up six or seven times per day. Doc. 14-1 at 114-15. Likewise, tingling and numbness in her hands radiates into her shoulders, but she can write and text. Doc. 14-1 at 115-16.

4

### *E. The ALJ's Findings*

In November 2022, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had the severe impairments of: (1) lumbar degenerative disc disease; (2) degenerative joint disease of the right knee and foot; (3) osteopenia; (4) Barrett's esophagus without dysplasia and chronic abdominal pain; (5) obesity; and (6) bipolar disorder. Doc. 14-1 at 21. The ALJ concluded, however, that none of Plaintiff's severe impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc. 14-1 at 22. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, subject to certain limitations:

> lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, sitting up to 6 hours in an 8-hour workday, and standing and/or walking up to 2 hours in an 8-hour workday. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. From a mental standpoint, she can understand, remember, and carry out detailed but not complex instructions, make decisions, and respond appropriately to changes in a routine work setting.

Doc. 14-1 at 26. Based on this RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a data entry clerk and an appointment clerk and, thus, is not disabled. Doc. 14-1 at 30-31.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the

5

listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

Plaintiff argues that the ALJ improperly relied on the ALJ's own lay interpretation of the medical evidence and thus the ALJ's formulation of Plaintiff's RFC is not supported by substantial evidence. Doc. 20 at 8-14. Defendant responds that the ALJ properly interpreted the medical evidence in determining Plaintiff's capacity to work and was not required to derive the RFC assessment directly from a medical opinion. Doc. 22 at 4-8.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC

determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence).

Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Nor must an ALJ's RFC finding "mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:21-CV-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (Horan, J.) (quoting *Carson v. Comm'r of Soc. Sec.*, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), *adopted by*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022) (Cummings, J.). Further, the absence of a medical opinion "'describing the types of work that the applicant is still capable of performing . . . does not, in itself, make the record incomplete.'" *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021), *adopted by*, 2021 WL 4025993 (Sept. 3, 2021) (explaining that the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the

7

demands included in the RFC). Such opinions are simply one category of evidence that the ALJ considers in assessing a claimant's RFC. *Id.* (citing 20 C.F.R. § 404.1513); *see also* 20 C.F.R. § 416.913 (categories of evidence for Title XVI applications). "[W]here no medical statement has been provided, [the court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

In the case *sub judice*, upon careful review of the applicable law and standards and the record evidence, the Court finds no error.

Plaintiff correctly notes that, in formulating Plaintiff's RFC, the ALJ rejected the SAMCs opinions after determining that the medical record warranted *more restrictive* limitations. Doc. 20 at 10; Doc. 14-1 at 29-30 (ALJ's decision finding both opinions "generally not persuasive" because they are not supported by or consistent with the overall record, including evidence acquired at the hearing level, which reflected that Plaintiff should be further restricted to sedentary work). While conceding that the ALJ did not err in this regard, Plaintiff nevertheless contends that because none of the remaining evidence indicated how her physical impairments translated to functional limitations, the ALJ should have obtained an updated medical opinion. Doc. 20 at 10-13.

Contrary to Plaintiff's argument, the ALJ was not required to seek an additional medical opinion based on the record in this case. *See West v. Kijakazi*, No. CV H-21-2395, 2022 WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022) ("The regulations do not prohibit the ALJ from assessing [Plaintiff's] RFC based on other record evidence when he finds all medical opinions to be unpersuasive."), *adopted by*, 2022 WL 4138574 (Sept. 12, 2022).

This was not a case where the SAMC's opinions were the only evidence of Plaintiff's ability to work. *Compare Henline v. Commr., Soc. Sec. Admin.*, 3:20-CV-1944-D-BH, 2022 WL

8

850102, at *16 (N.D. Tex. Mar. 4, 2022) (Ramirez, J.), *adopted by*, 2022 WL 847237 (N.D. Tex. Mar. 22, 2022) (Fitzwater, J.) (reversing based on *Ripley* where the only evidence of record addressing the claimant's ability to work was the SAMC's opinion, which the ALJ largely rejected when choosing to impose *less* restrictive RFC limitations). Indeed, upon determining that the SAMCs' opinions were unpersuasive, the ALJ assessed Plaintiff's RFC based on other categories of evidence, including Plaintiff's medical records, which included x-rays, and her hearing testimony. Doc. 14-1 at 26-28; *see, e.g.*, *Carson*, 2022 WL 2525438, at *7 (concluding that the ALJ did not err in finding all state agency opinions not persuasive and in formulating the RFC based on testimony, medication management, activities of daily living, and other medical evidence). And because the RFC need not "mirror or match a medical opinion," the Court cannot conclude that the ALJ erred in this respect. *See Carson*, 2022 WL 2525438, at *7.

Under the required deferential review, the Court finds that the ALJ's determination of Plaintiff's physical RFC is supported by substantial evidence. After considering Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's statements about the "intensity, persistence and limiting effects of [her] symptoms" were not entirely consistent with the other evidence. Doc. 14-1 at 26. More specifically, "the limiting effects of [Plaintiff's] symptoms fail to rise to the level of preventing her from being able to perform work activities." Doc. 14-1 at 27. The ALJ noted that the record contains little objective evidence that Plaintiff had significant trouble using her extremities, loss of sensation or muscle weakness, or decreased range of motion in her back and lower extremities. Doc. 14-1 at 27. After citing March 2021 x-rays of Plaintiff's knees and lower back, the ALJ noted that Plaintiff's condition did not preclude her from working because she improved with treatment. Doc. 14-1 at 27.

Likewise, physical examinations during the relevant period "generally yielded normal results, including normal range of motion, normal muscle strength, and independent ambulation with a normal gait." Doc. 14-1 at 27. Distinguishing the visit with Dr. Ukoha described above, the ALJ noted that Plaintiff generally had no significant mobility deficits and was not noted as using an assistive device to walk. Doc. 14-1 at 27 (citing Exs. 5F, 7F, 9F, and 12F). These facts "[did] not support the degree of limitation on [Plaintiff's] ability to lift, stand, and walk as asserted." Doc. 14-1 at 27.

As the ALJ also pointed out, the record reflected that Plaintiff's pain was not as limiting as alleged. Doc. 14-1 at 27. Despite being prescribed pain medications, Plaintiff testified that she did not take them. Doc. 14-1 at 27. Further, the record did not show any "history of spinal or knee surgery, physical therapy, medial branch blocks, radio frequency ablation, or need for an assistive device such as a cane or walker, during the relevant period." Doc. 14-1 at 27 (citing Exs. 5F, 7F, and 9F). To the contrary, most physical examinations yielded "relatively benign results aside from pain," the "vast majority" of which related to chronic abdominal pain, not back or knee pain. Doc. 14-1 at 27-28 (citing Exs. 5F, 7F, 9F, and 12F). As to her abdominal pain, she continued to seek treatment even though medical imaging showed normal results, and medical staff noted "a possible somatic component to her pain" due to an increase in life stressors. Doc. 14-1 at 28 (citing Ex. 9F).

With respect to Plaintiff's obesity, the ALJ highlighted that Plaintiff "rarely" complained about symptoms related to it, focusing her medical treatment on her chronic pain. Doc. 14-1 at 28. Still, medical staff did not pose restrictions based on her strength and mobility but encouraged her to increase her physical activity. Doc. 14-1 at 28 (citing Ex. 9F).

10

In sum, the 5,500-page record in this case is "replete with medical documents that spanned years." *Webster*, 19 F.4th at 720 (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). The ALJ reviewed Plaintiff's records dating from 2017 to 2022 and considered the SAMCs' opinions (which were rejected), the findings of Plaintiff's treating sources, and Plaintiff's testimony in assessing her RFC. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (cleaned up) (quotation marks and citations omitted). The ALJ then set forth her findings in a detailed 22-page opinion. Nothing in the record suggests the ALJ needed additional medical information to reach an informed decision about whether Plaintiff was disabled. Accordingly, the ALJ's decision was based on substantial evidence in a sufficiently developed record, and the ALJ did not err in assessing Plaintiff's RFC as she did. *See Whitehead*, 820 F.3d at 779 ("[W]e cannot say that no credible evidentiary choices or medical findings support the [ALJ's] decision.") (citation and internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**SIGNED** on August 26, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE